UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|   |   |
|---|---|
| WAYNE JENNINGS, | * |
| Plaintiff, | * |
| v. | * Civil Action No. 19-cv-10362-ADB |
| O'REILLY AUTO ENTERPRISES, LLC | * |
| Defendant. | * |

**MEMORANDUM AND ORDER ON DEFENDANT'S
MOTION FOR SUMMARY JUDGMENT**

BURROUGHS, D.J.

Plaintiff Wayne Jennings brings this action against his former employer, Defendant O'Reilly Auto Enterprises, LLC ("O'Reilly"), alleging that O'Reilly subjected him to a hostile work environment. See [ECF No. 17-1 ¶ 35 ("Am. Compl.")]. Currently before the Court is O'Reilly's motion for summary judgment. [ECF No. 33]. For the reasons set forth below, O'Reilly's motion is DENIED.

I.  **BACKGROUND**

   A.  **Factual Background**

O'Reilly is a company based in Springfield, Missouri. [Am. Compl. ¶ 5; ECF No. 19 ¶ 5 ("Ans.")]. The company maintains a distribution facility in Devens, Massachusetts. [Am. Compl. ¶ 5; Ans. ¶ 5]. O'Reilly hired Mr. Jennings as a truck driver on or about January 15, 2015. [Am. Compl. ¶ 6; Ans. ¶ 6]. On or about March 15, 2015, O'Reilly hired William Nunez as a truck driver. [Am. Compl. ¶ 9; Ans. ¶ 9].

Mr. Jennings's claim is based on his interactions with Mr. Nunez, his co-worker. Mr. Jennings maintains that, between March 2015 and September 2017, Mr. Nunez made a series

of inappropriate remarks to him and others. [Am. Compl. ¶¶ 10–30]. Mr. Jennings further asserts that, although he consistently reported Mr. Nunez's inappropriate behavior to Mike Bellio, their mutual supervisor, O'Reilly did not take any action to stop Mr. Nunez until August 2016, when Mr. Jennings reported Mr. Nunez to O'Reilly's Human Resources ("HR") director. [ECF No. 37-2 at 18 ("Jennings Dep.")]. O'Reilly, on the other hand, takes the position that it took prompt and appropriate remedial action when it became aware of Mr. Nunez's behavior. [ECF No. 34 at 3]. Because Mr. Jennings is the non-moving party, the Court describes the facts in the light most favorable to him, noting the issues on which the parties disagree.

The first two incidents occurred shortly after Mr. Nunez was hired. [Jennings Dep. at 8]. Mr. Nunez made at least two lewd sexual comments in the drivers' breakroom while Mr. Jennings was present. [Id. at 8, 11]. According to Mr. Jennings, he reported both comments to Mr. Bellio. [Id.]. The third incident occurred on or about June 15, 2016. [Id. at 12]. On that day, Mr. Nunez walked into the drivers' breakroom and said the N-word. [Id.]. Mr. Jennings again reported the incident to Mr. Bellio, who said that he would speak to Mr. Nunez. [Id.]. Later that month, Mr. Jennings and Mr. Nunez got into an argument about a piece of work-related equipment. [Id. at 14–15]. Mr. Nunez threatened Mr. Jennings by making a gun shape with his fingers, and saying, "[t]his is what I do to people like you." [Id.]. Mr. Jennings reported the incident to Mr. Bellio immediately.[1] [Id. at 15]. In July 2016, Mr. Nunez used the N-word in front of Mr. Jennings, Mr. Bellio, and other O'Reilly drivers. [Id. at 16]. Mr. Bellio told Mr. Nunez not to use the word again. [Id.].

---

[1] Mr. Bellio does not recall Mr. Jennings reporting these four incidents to him and maintains that Mr. Jennings reported only two incidents involving Mr. Nunez: one in August 2016 and one in September 2017. [ECF No. 37-5 at 6].

In August 2016, while Mr. Jennings and other were present, Mr. Nunez used the N-word to describe Mr. Jennings. [Jennings Dep. at 17–18]. Although Mr. Jennings told Mr. Bellio—who did not witness the incident—about Mr. Nunez's comments, he also reported the incident to O'Reilly's HR director, Jeri Cande, because he was not satisfied with how Mr. Bellio had handled his previous complaints. [Id. at 18]. Mr. Jennings described the incident with Mr. Nunez to Ms. Cande, and she asked him to provide a formal, written statement. [Id. at 18–19]. After seeing Mr. Jennings speaking with Ms. Cande, Mr. Nunez apologized to Mr. Jennings. [Id. at 19]. O'Reilly investigated the August 2016 incident, and Mr. Nunez admitted to using the N-word to refer to Mr. Jennings. [ECF No. 37-6 at 5]. Pursuant to its progressive discipline policy, O'Reilly issued Mr. Nunez a "first warning," which is a verbal reprimand that is recorded in one's employee file. [ECF No. 37-7 at 2]. The form placed in Mr. Nunez's file referenced only the August 2016 incident. [Id.]. The decision to issue Mr. Nunez a "first warning," as opposed to a more severe punishment, was made by a group and based on the fact that O'Reilly had had "no previous concerns or issues" with Mr. Nunez.[2] [ECF No. 37-6 at 6]. After Mr. Nunez was disciplined, all O'Reilly drivers were given harassment training. [Jennings Dep. at 30].

In August 2017, Mr. Nunez addressed Mr. Jennings as "[N-word] Wayne" in front of two or three other drivers. [Jennings Dep. at 25–26]. Mr. Jennings spoke to Mr. Nunez privately, and Mr. Nunez told Mr. Jennings, in essence, that O'Reilly cared more about Mr. Nunez's driving than how he treated Mr. Jennings. [Id. at 26]. Mr. Jennings reported both Mr. Nunez's original statement, and his comments afterward, to Mr. Bellio, who responded that "[Mr. Nunez]

---

[2] Mr. Bellio testified at his deposition that the statement was meant "in jest" and was not made "with malice." [ECF No. 37-5 at 8].

is going to be [Mr. Nunez]."[3]  [Id. at 28].  Mr. Jennings then reported this incident to Ms. Cande. [ECF No. 37-13; Jennings Dep. at 27].  Ms. Cande asked him to submit a written statement and interviewed other O'Reilly drivers to corroborate Mr. Jennings's account.  [Jennings Dep. at 34; ECF No. 37-13].  Because Ms. Cande found that no other drivers witnessed Mr. Nunez use the N-word,[4] Mr. Nunez was not punished (though he did receive "coaching").  [ECF No. 37-13 at 3].

There were no further incidents during Mr. Jennings's time at O'Reilly, and he left the company a few months later for unrelated reasons.  [Jennings Dep. at 5].

### B. Procedural Background

On February 26, 2019, Mr. Jennings filed his initial complaint against O'Reilly, alleging that O'Reilly violated 42 U.S.C. § 1981 by creating a hostile work environment.  [ECF No. 1].[5] On April 8, 2021, O'Reilly moved for summary judgment.  [ECF No. 33].  Plaintiff opposed on April 29, 2021, [ECF No. 39], and O'Reilly replied on May 11, 2021, [ECF No. 44].

## II. LEGAL STANDARD

Summary judgment is appropriate where the moving party can show that "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  Fed. R. Civ. P. 56(a).  "[A]n issue is 'genuine' if it 'may reasonably be resolved in favor of either party.'"  Robinson v. Cook, 863 F. Supp. 2d 49, 60 (D. Mass. 2012) (alteration in original) (quoting Vineberg v. Bissonnette, 548 F.3d 50, 56 (1st Cir. 2008)).  "A fact is material

---

[3] Mr. Bellio does not recall saying this.  [ECF No. 37-5 at 11].

[4] Steven Tata, another O'Reilly driver, testified at his deposition that he told Ms. Cande that he witnessed Mr. Nunez using racial slurs multiple times and that he believed other drivers told her the same. [ECF No. 39-4 at 32–34].

[5] Mr. Jennings filed the operative complaint on November 1, 2019. [Am. Compl.].

4

if its resolution might affect the outcome of the case under the controlling law." <u>Cochran v. Quest Software, Inc.</u>, 328 F.3d 1, 6 (1st Cir. 2003).  Thus, "[a] genuine issue exists as to such a fact if there is evidence from which a reasonable trier could decide the fact either way." <u>Id.</u>  By invoking summary judgment, "the moving party in effect declares that the evidence is insufficient to support the nonmoving party's case." <u>United States v. Plat 20, Lot 17, Great Harbor Neck, New Shoreham, R.I.</u>, 960 F.2d 200, 204 (1st Cir. 1992) (citing <u>Celotex Corp. v. Catrett</u>, 477 U.S. 317, 325 (1986)).

> To succeed in showing that there is no genuine dispute of material fact, the moving party must . . . "affirmatively produce evidence that negates an essential element of the non-moving party's claim," or, using "evidentiary materials already on file . . . demonstrate that the non-moving party will be unable to carry its burden of persuasion at trial."

<u>Ocasio-Hernández v. Fortuño-Burset</u>, 777 F.3d 1, 4–5 (1st Cir. 2015) (quoting <u>Carmona v. Toledo</u>, 215 F.3d 124, 132 (1st Cir. 2000)).  Conversely, "[t]o defeat a properly supported motion for summary judgment, the nonmoving party must establish a trial-worthy issue by presenting enough competent evidence to enable a finding favorable to the nonmoving party." <u>ATC Realty, LLC v. Town of Kingston, N.H.</u>, 303 F.3d 91, 94 (1st Cir. 2002) (quoting <u>LeBlanc v. Great Am. Ins. Co.</u>, 6 F.3d 836, 842 (1st Cir. 1993)).  That is, the nonmoving party must set forth specific, material evidence showing that there is "a genuine disagreement as to some material fact." <u>Plat 20, Lot 17, Great Harbor Neck</u>, 960 F.2d at 204 (citing <u>Anderson v. Liberty Lobby, Inc.</u>, 477 U.S. 242, 247–48 (1986)).

In reviewing the record, the Court "must take the evidence in the light most flattering to the party opposing summary judgment, indulging all reasonable inferences in that party's favor." <u>Cochran</u>, 328 F.3d at 6.  The First Circuit has noted that this review "is favorable to the nonmoving party, but it does not give him a free pass to trial." <u>Hannon v. Beard</u>, 645 F.3d 45, 48 (1st Cir. 2011).  "The factual conflicts upon which he relies must be both genuine and

material[,]" Gomez v. Stop & Shop Supermarket Co., 670 F.3d 395, 397 (1st Cir. 2012), and the Court may discount "conclusory allegations, improbable inferences, and unsupported speculation." Cochran, 328 F.3d at 6 (quoting Medina-Munoz v. R.J. Reynolds Tobacco Co., 896 F.2d 5, 8 (1st Cir. 1990)).

### III.     DISCUSSION

> To prevail on a claim of hostile work environment, a plaintiff must establish: (1) that he is a member of a protected class; (2) that he was subjected to unwelcome harassment; (3) that the harassment was based on race; (4) that the harassment was sufficiently severe or pervasive so as to alter the conditions of plaintiff's employment and create an abusive work environment; (5) that the objectionable behavior was both objectively and subjectively offensive, such that a reasonable person would find it hostile or abusive and that the victim did in fact perceive it to be so; and (6) that some basis for employer liability exists.

Wilson v. Moulison N. Corp., 691 F. Supp. 2d 232, 236 (D. Me. 2010) ("Wilson I") (citing O'Rourke v. City of Providence, 235 F.3d 713, 728 (1st Cir. 2001)), aff'd, 639 F.3d 1 (1st Cir. 2011) ("Wilson II").  O'Reilly's summary judgment motion is premised on Mr. Jennings's alleged failure of proof concerning the sixth element: some basis for employer liability. [ECF No. 34 at 7].

Because the alleged harassment was inflicted by Mr. Nunez, a non-supervisor, to prevail against O'Reilly, Mr. Jennings must demonstrate that O'Reilly was negligent. See Noviello v. City of Bos., 398 F.3d 76, 96-97 (1st Cir. 2005).  As such, he must show that O'Reilly knew or should have known about the harassment and failed to take prompt and appropriate action to prevent and/or remedy it.  See id.; see also Wilson II, 639 F.3d at 7 (noting that to prevail against an employer, the plaintiff "must show that the employer is liable either for creating or for tolerating th[e hostile] atmosphere").

There are genuine factual disputes concerning when O'Reilly knew or should have known about Mr. Nunez's behavior and the timeliness and appropriateness of its response, which

6

preclude summary judgment. Specifically, based on Mr. Jennings's testimony, a reasonable jury could conclude that O'Reilly should have known about Mr. Nunez's harassment by June 2016 (or perhaps even earlier), but did not discipline Mr. Nunez until August 2016.[6] Against that backdrop, a reasonable jury could conclude that O'Reilly failed to take prompt remedial action. Further, even if a jury were to find that O'Reilly responded promptly, it could still find that, given the nature of Mr. Nunez's conduct, O'Reilly's actions in August 2016 (issuing a "first warning") and August 2017 (essentially doing nothing) were not appropriate.[7] In short, the parties have significantly different views on what happened, when it happened, and whether O'Reilly's responses were commensurate with Mr. Nunez's behavior, which are issues that cannot be resolved at summary judgment. O'Reilly's motion, [ECF No. 33], must therefore be denied.

## IV.     CONCLUSION

Accordingly, for the reasons stated above, O'Reilly's motion for summary judgment, [ECF No. 33], is <u>DENIED</u>.

---

[6] As discussed above, Mr. Jennings avers that, by June 2016, he had reported at least four instances of Mr. Nunez's inappropriate conduct to Mr. Bellio. A reasonable jury could conclude that Mr. Bellio—who engaged in supervisory functions, [ECF No. 37-5 at 4]—was a supervisor and that O'Reilly was therefore put on notice of Mr. Nunez's harassment as soon as Mr. Bellio was made aware of it. <u>See</u> <u>Noviello</u>, 398 F.3d at 96–97; <u>Wilson I</u>, 691 F. Supp. 2d at 237.

[7] Whether or not an employer's actions were appropriate is a question of fact best left for a jury unless no reasonable jury could find for the plaintiff. <u>See</u> <u>Crowley v. L.L. Bean, Inc.</u>, 303 F.3d 387, 404 (1st Cir. 2002); <u>Wilson II</u>, 639 F.3d at 8 ("Although this inquiry calls for a case-by-case assessment, summary judgment will lie when the undisputed facts show that a reasonable jury could not help but conclude that the employer's response was both timely and appropriate."). Here, given the nature of Mr. Nunez's conduct, a reasonable jury could conclude that O'Reilly's disciplinary actions were insufficient under the circumstances. This is especially true if, as Mr. Jennings contends, the August 2016 incident was Mr. Nunez's third use of the N-word.

**SO ORDERED.**

July 28, 2021                                    /s/ Allison D. Burroughs
                                                 ALLISON D. BURROUGHS
                                                 U.S. DISTRICT JUDGE